UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES D. WATTERS,

       Plaintiff,                            CIVIL ACTION NO. 11-13860

       v.                                    DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR REMAND AND
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On September 2, 2011, Plaintiff filed this case seeking judicial review of the Commissioner's decision disallowing benefits. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision. (Dkt. No. 3). Before the Court is Plaintiff's Motion for Remand Pursuant to Sentence Four (Dkt. No. 11), and Defendant's Motion for Summary Judgment. (Dkt. No. 12). Plaintiff also filed a Reply. (Dkt. No. 13).

    *B.    Administrative Proceedings*

Plaintiff filed an application for disability and disability insurance benefits on April 9, 2008, alleging that he became unable to work on December 31, 2002. (Tr. 15, 112-115). The claim was initially disapproved by the Commissioner on June 17, 2008. (Tr. 15, 36-40). Plaintiff requested a hearing and on September 21, 2009, Plaintiff appeared with counsel for a

video hearing before Administrative Law Judge ("ALJ") Ralph F. Shilling, who considered the case *de novo*. In a decision dated January 25, 2010, the ALJ found that Plaintiff was not disabled. (Tr. 12-21). Plaintiff requested a review of this decision on March 25, 2010. (Tr. 11). The ALJ's decision became the final decision of the Commissioner on July 22, 2011 when, after the review of additional exhibits[1] (AC-8E, 9E, 7F, Tr. 170-178, 179, 217-236), the Appeals Council denied Plaintiff's request for further review. (Tr. 1-6).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for remand be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 52-years-old on the date of the administrative hearing. (Tr. 27). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of December 31, 2002 through his date last insured of December 31, 2007. (Tr. 17).

The analysis ended at step two when the ALJ found Plaintiff was not disabled, because "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (Tr. 17).

### B. *Plaintiff's Claims of Error*

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Plaintiff makes three arguments on appeal: (1) the ALJ improperly terminated the disability analysis at step two; (2) the ALJ improperly weighed the opinion of Plaintiff's treating physician; and (3) Plaintiff did not receive a full and fair hearing.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

  **B.** ***Governing Law***

  The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

#### 1. The ALJ Did Not Err by Terminating the Disability Analysis at Step Two

In the Sixth Circuit, step two of the disability analysis has been construed as a *de minimis* hurdle in the disability determination process. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 690-92 (6th Cir. 1985); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

While it is a *de minimis* standard, in order to make it past step two of the disability analysis, Plaintiff must present medical signs and laboratory findings that demonstrate the existence of a medically determinable physical impairment; a medically determinable physical impairment cannot be established by symptoms alone. *See* SSR 96-4p:

1. A "symptom" is not a "medically determinable physical or mental impairment" and no symptom by itself can establish the existence of such an impairment.

2. In the absence of a showing that there is a "medically determinable physical or mental impairment," an individual must be found not disabled at step 2 of the sequential evaluation process. No symptom or

>  combination of symptoms can be the basis for a finding of disability, no
>  matter how genuine the individual's complaints may appear to be, unless
>  there are medical signs and laboratory findings demonstrating the
>  existence of a medically determinable physical or mental impairment.

Plaintiff concedes that "there is no objective medical evidence of record from 2002 through 2007." (Pl. Br. at 3). However, he relies on a letter dated October 16, 2009 from Dr. Michael Kopec in support of his argument that he "suffered from the severe impairments of chronic pain and fatigue secondary to multiple severe conditions of the spine and the bilateral knees." (Pl. Br. at 4). According to Plaintiff, he can use objective medical evidence obtained after the date he was last insured to prove he had a "severe" impairment prior to the date he was last insured. (Pl. Reply at 1). The October 2009 letter from Dr. Kopec says:

>  This letter is written on behalf of Mr. James Watters. I was asked to estimate the onset of Mr. Watters' current state of disability.
>
>  As you know, Mr. Watters was in a motor vehicle collision in 1976 that caused multiple injuries. According to Mr. Watters, the large majority of his current complaints stem from that event. Although his physical condition began to decline throughout the 1990s, Mr. Watters reports that his current level of disability began around the year 2000. Despite his limitations, he continued to work full time for two more years due to the need for a steady income. He stopped working full time in 2002. Mr. Watters states that he becomes easily fatigued and is not able to perform the functions that his work requires because of his chronic pain. He has pain when performing the tasks required of his profession, such as climbing stairs and ladders and lifting heavy items. Even lighter and more sedentary activity is difficult for Mr. Watters secondary to his pain complaints.
>
>  Mr. Watters established care with me this past July. Unfortunately, a large majority of his medical records previous to the current time were not available to me. Over the past few months, Mr. Watters has had multiple imaging studies performed. X-rays of his lumbar spine revealed moderate-to-severe degenerative disc disease with severe joint space narrowing at one joint space. His follow-up MRI once again revealed degenerative disc disease in his lower spine as well as degenerative spinal stenosis at one vertebral level and possible disc impingement upon one of his nerve roots. X-rays of his knees show some mild osteoarthritic changes in his right knee and mild-to-moderate osteoarthritic changes in his left knee.

> The findings on x-ray and MRI represent changes that are chronic in nature, and his imaging findings seem to correspond to his pain complaints and his clinical presentation. Although I cannot provide a definite date of disability at Mr. Watters' current level of limitation, I can reasonably conclude from objective imaging that Mr. Watters' pain complaints originate from processes that are chronic in nature. Therefore, it is reasonable that Mr. Watters' current state of physical limitation could have begun at the specified time that he reports.

(Tr. 209).

This Magistrate Judge finds the ALJ's decision to terminate the disability analysis at step two is supported by substantial evidence and is in compliance with SSR 96-4p. First, Plaintiff began seeing Dr. Kopec in July 2009 – nearly two years after the date Plaintiff was last insured.

Second, Dr. Kopec could not review Plaintiff's past medical records, because Plaintiff was unable to obtain them. Dr. Kopec based his opinion solely on Plaintiff's complaints and on imaging studies that were done earlier in 2009.

Third, Dr. Kopec's letter was only "minimally probative" of Plaintiff's condition between 2002-2007. *See Higgs*, 880 F.2d at 863.

Finally, Dr. Kopec did not have any objective medical evidence to support his conclusion that "it is reasonable that Mr. Watters' current state of physical limitation could have begun at the specified time that he reports." (Tr. 209). This opinion was simply speculation; Dr. Kopec could not say with any degree of certainty if and when Plaintiff became unable to work. *See Higgs*, 880 F.2d at 863 (affirming the Appeals Council's decision to dismiss the case at step two of the disability analysis because "[t]here is nothing in the objective medical record credibly suggesting that [Plaintiff] was significantly affected by any of her impairments on or before [the date last insured]").

### 2. The ALJ's Failure to Comply with the Treating Source Rule was Harmless Error

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 CFR § 404.1527(e); *see also Warner v. Comm'r of Soc.*

*Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Gaskin v. Comm'r of Soc. Sec.*, 280 F.Appx. 472, 474 (6th Cir. 2008). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F.Appx. 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Nevertheless, there are three ways in which a *de minimis* violation of the procedural requirement could constitute harmless error and not warrant reversal: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) the Commissioner otherwise satisfied the purposes behind the explanatory safeguard. *See Wilson*, 378 F.3d at 547. In the last of these circumstances, "it is critical that . . . [the Court] remember the goals of the procedural safeguard. [The Court] review[s] the . . . decision to see if it implicitly provides sufficient reasons for the rejection of [Dr. Kopec's] opinion . . . not merely whether it indicates that the ALJ did reject [Dr. Kopec's] opinion." *Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 464 (6th Cir. 2006). For example, an ALJ can meet the goal of the procedural safeguard by indirectly attacking the supportability or the consistency of a treating physician's opinion with the other record evidence. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 470, 472 (6th Cir. 2006). The ALJ stated the following regarding Dr. Kopec's opinion:

> Dr. Kopee[sic] stated in a letter that it is reasonable to conclude that the back issues could have begun in 2002 as alleged by [Plaintiff]. He noted that MRI evidence from 2009 indicates degenerative disc disease in the lumbar spine suggestive of nerve root impingement. 2009 xrays of the knees show

>osteoarthritic changes in the bilateral knees. In an effort to help [Plaintiff] he states that the issues could have been present for many years. However, there is simply no medical evidence to support this conclusion. [Plaintiff] stopped working in 2002 because it involved activity that was becoming too strenuous for him. However, there are simply no medical records from 2002 to the end of 2007.

(Tr. 18).

This Magistrate Judge finds the ALJ did not explain the weight he gave Dr. Kopec's opinion nor did the ALJ apply the factors outlined in 20 CFR § 404.1527. However, the ALJ implicitly provided sufficient reasons to reject Dr. Kopec's opinion. After outlining the medical evidence Plaintiff provided from 1976, 2008, and 2009, the ALJ concluded that:

>[i]solated comments by [Plaintiff] about physical impairments are insufficient, without further support, to raise a suspicion of an exertional impairment.
>
>[r]egardless of the serious medical issues facing [Plaintiff] today, . . . there is insufficient evidence to substantiate the existence of a medically determinable impairment prior to December 31, 2007, the date last insured.

(Tr. 18-19). The ALJ's analysis is supported by substantial evidence; it indirectly attacked the supportability of Dr. Kopec's opinion with the other record evidence, which did not contain any medical evidence from the relevant time period.

### 3. The ALJ Provided Plaintiff a Full and Fair Hearing

Plaintiff's final argument is that the ALJ denied him a "full and fair hearing" because "the ALJ did not . . . elicit testimony from the Plaintiff regarding his conditions and limitations prior to the date last insured, did not allow . . . Plaintiff's counsel to offer a statement on the Plaintiff's behalf, examine [Plaintiff], or examine the accompanying witness." (Pl. Br. at 8). According to the Sixth Circuit:

>The claimant bears the ultimate burden to prove by sufficient evidence that [he] is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record. *Duncan v. Sec'y of*

*Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). This court has cautioned that the determination of whether an ALJ has failed fully to develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis[.]

*Nabours v. Comm'r of Soc. Sec.*, 50 Fed. Appx. 272, 275 (6th Cir. 2002).

The record in this case shows Plaintiff was represented by counsel, and Plaintiff's counsel did not object to the ALJ's decision to terminate the hearing until after he received additional medical evidence. In addition, Plaintiff's counsel never asked the ALJ for permission to examine Plaintiff or Plaintiff's witness. Further, Plaintiff briefly explained to the ALJ that he had a motorcycle wreck in 1976 and arthritis in 1979. Plaintiff also told the ALJ he is unable to climb stairs and ladders, he has knee pain, and pain in his lower back  (Tr. 27-28, 31). Finally, the following exchange occurred during the administrative hearing:

> ALJ: You need a medical opinion that says that prior to 2007, you had certain medical issues and they were causing you to be not able to function. Your attorney knows how to address those issues, so I'm going to give you 30 days to visit with those doctors. I can look at your MRI and see if they can give you an opinion that goes back to 2007, but before I get into how you feel you're doing or how your friend feels you're doing, we really need to hear from the doctors first. That's kind of how we run here.
>
> CLMT: And I understand that. I'd hoped to have that for you. I was hoping I could get an email this morning, but –
>
> ATTY: The doctor gave him a disc, and we've trying[sic] to decipher it, we can't find any reports. There's just images, hundreds of images.
>
> . . .
>
> ALJ: I'm going to give you 30 days, and if you need more time . . . than[sic], you let me know.
>
> CLMT: Okay.

| | | |
|---|---|---|
| ALJ: | | And then once we get that report in, I will either be able to move on your case, or we'll bring you back in. |
| CLMT: | | I see. |
| ATTY: | | Thank you, your honor. |

(Tr. 32-33). This exchange shows both Plaintiff and Plaintiff's counsel understood the reason why the ALJ terminated the hearing without extensive testimony from Plaintiff, testimony from Plaintiff's witness, or testimony from a vocational expert. The ALJ did not bring Plaintiff in for a second hearing after he received the additional medical evidence because Plaintiff did not provide a medical opinion from a doctor that clearly stated Plaintiff was unable to work before 2007; as discussed above, the ALJ was correct to disregard the opinion from Dr. Kopec.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

> s/Mark A. Randon
> Mark A. Randon
> United States Magistrate Judge

Dated: June 28, 2012

### Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 28, 2012, by electronic and/or ordinary mail.*

> *s/Melody Miles*
> *Case Manager*